## REINMAN *v.* CITY OF LITTLE ROCK.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 153.   Argued January 22, 1915.—Decided April 5, 1915.

The decision of the state court of last resort that a municipal ordinance is within the scope of the power conferred on the municipality by the legislature is conclusive upon this court.

Where the state court has held that an ordinance is within the power conferred on the municipality it must be regarded as a state law within the meaning of the Federal Constitution.

Any enactment, from whatever source originating, to which a State gives

the force of law is a statute of the State within the meaning of § 237, Jud. Code, conferring jurisdiction on this court.

Even though a livery stable is not a nuisance *per se* it is within the police power of the State to regulate the business, and to declare a livery stable to be a nuisance, in fact and in law, in particular circumstances and particular places; if such power is not exercised arbitrarily or with unjust discrimination it does not infringe upon rights guaranteed by the Fourteenth Amendment.

The opinion of the state court is to be interpreted in the light of the issue as framed by the pleadings.

Where averments of facts in the complaint are contradicted by the answer, and the expression used by the court "dismissed for want of equity," may, under the practice of the state court, as in Arkansas, indicate dismissal on the merits as distinguished from a dismissal based upon a formal defect or fault—this court assumes that the state court adopted the facts set up in the answer, that being the basis of facts which would most clearly sustain its decision.

The ordinance of the City of Little Rock, Arkansas, making it unlawful to conduct the business of a livery stable in certain defined portions of that city, is not unconstitutional as depriving an owner of a livery stable already established within that district of his property without due process of law or as denying him equal protection of law.

107 Arkansas, 174, affirmed.

PLAINTIFFS in error filed their bill of complaint in the Pulaski County Chancery Court, a state court of general chancery jurisdiction, praying an injunction against the City of Little Rock, its mayor and other officers, to restrain them from enforcing an ordinance passed by the city council to regulate livery stables. The ordinance recites that "The conducting of a livery stable business within certain parts of the City of Little Rock, Arkansas, is detrimental to the health, interest and prosperity of the City," and it is ordained that it shall be unlawful to conduct or carry on that business within the area bounded by Center, Markham, Main, and Fifth Streets, under penalties prescribed. Plaintiffs include a firm that conducts a livery and sale stable business, and a corporation that carries on a general livery stable business, within the de-

fin'ed area. It is averred that the businesses are and have been for many years conducted in brick buildings, in a proper and careful manner, and without complaint as to sanitary conditions; that plaintiffs during the progress of their business have been compelled to enter into leases for the grounds and improvements and to construct brick buildings at great cost, useful for no other purpose, and that these and other large expenditures made for improvements will be lost if they are compelled to cease to do business there; that there is no other available site in the city where such business can be profitably carried on and where plaintiffs have assurance that they may remain without molestation; that these matters are matters of public notoriety, and the establishment of the business in that locality has been encouraged by the city, and upon the strength of such encouragement the buildings were constructed and expenditures made; that the passage of the ordinance was procured by named parties (not made defendants) who desired to purchase the property of plaintiffs; that plaintiffs have tried to obtain another location for their business outside of the prohibited district, but are unable to do so except with extravagant outlay which they are unable to make; and that the action of city council in prohibiting the carrying on of any livery stable business in the locality mentioned is unreasonable, discriminatory, not warranted by law or the charter of the City, and in contravention of those provisions of the Fourteenth Amendment respecting due process of law and the equal protection of the laws. A verifying affidavit and a copy of the ordinance were attached as exhibits.

Defendants demurred, upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer and granted a temporary restraining order. Defendants answered, denying the material averments of the bill, and asserting that the ordinance was passed in good faith

for the purpose of promoting the health and prosperity of the citizens, and in the belief that said livery stables in said district were conducive to sickness and inconvenience and ill health to the citizens, and were damaging to the property in that vicinity; also, "that said district composes the greatest shopping district in the entire State of Arkansas; that it contains the largest and best hotels in the State, and the district encompasses the most valuable real estate in the entire State; that said stable business is conducted in a careless manner, and that it is nothing unusual in connection with said sale stables to have from fifty to one hundred head of horses and mules driven through the principal streets to said stables; that there is always an offensive odor coming from said stables, to the great detriment of the tenants in the property adjoining and the shoppers who go within this district, and hotel guests; that said stables being in such densely populated part of the city produce disease, making that section extremely unwholesome," etc.

Plaintiffs excepted and also demurred to the answer as insufficient in law to raise an issue of fact upon the authority assumed by the City to pass the ordinance, and as stating no facts sufficient to constitute a defense. The cause was then heard, upon the complaint and exhibits, the answer, and the demurrer; the demurrer was sustained, and, defendants declining to plead further, it was decreed that the temporary restraining order be made perpetual.

Defendants appealed to the Supreme Court of Arkansas, which court, on February 24, 1913, made a decree reversing the decree of the lower court, with costs, and remanding the cause with directions to dismiss the complaint for want of equity. The decree of reversal recited: "This cause came on to be heard upon the transcript of the record of the Chancery Court of Pulaski County, and was argued by solicitors, on consideration whereof it is the opinion of the Court that there is error in the proceedings and

decree of said Chancery Court in this cause, in this: Said court erred in granting the relief prayed for in the complaint, whereas the same is without equity and should have been dismissed." It was therefore ordered and decreed that the decree of the Chancery Court be reversed, "and that this cause be remanded to said Chancery Court with directions to dismiss the complaint of the appellees for want of equity." Upon the same day an opinion was filed in the Supreme Court, expressing the grounds of the decision. 107 Arkansas, 174.

Thereafter, a petition for rehearing was filed, and by leave of the court was submitted at a later date with a supporting brief. Among the averments of the petition were the following: "That the effect of the ruling of this Honorable Court is to deprive the appellees of the opportunity of presenting evidence to sustain those of the allegations of the Complaint as are denied by the said answer, for the said ruling orders the dismissal of the said complaint and does not remand the cause so that appellees may present evidence to sustain the allegations of their bill of complaint bearing on the question whether said ordinance and permit system does or does not amount to a deprivation of property and a denial of the equal protection of the laws, within the provisions of the Fourteenth Amendment to the Constitution of the United States, as well as the provisions of the constitution of the State of Arkansas. That unless the appellees are given an opportunity to introduce evidence as aforesaid the said answer may be taken as conclusive against them; that upon the finding that said demurrer was improperly sustained the cause should have been remanded to take evidence as to the said constitutional questions, including the use and abuse of the said permit system by said City." The petition for rehearing was taken under advisement, and at a later date overruled, without opinion. The present writ of error was then sued out.

*Mr. Morris M. Cohn* for plaintiff in error.

*Mr. J. Merrick Moore* for defendant in error.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The decision of the state court of last resort is conclusive upon the point that the ordinance under consideration is within the scope of the powers conferred by the state legislature upon the city council of Little Rock. It must therefore be treated, for the purposes of our jurisdiction, as an act of legislation proceeding from the law-making power of the State; for a municipal ordinance passed under authority delegated by the legislature is a state law within the meaning of the Federal Constitution; and any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State within the meaning of Judicial Code, § 237, which confers jurisdiction upon this court. *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 555, and cases cited.

Therefore the argument that a livery stable is not a nuisance *per se*, which is much insisted upon by plaintiffs in error, is beside the question. Granting that it is not a nuisance *per se*, it is clearly within the police power of the State to regulate the business and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law, provided this power is not exerted arbitrarily, or with unjust discrimination, so as to infringe upon rights guaranteed by the Fourteenth Amendment. For no question is made, and we think none could reasonably be made, but that the general subject of the regulation of livery-stables, with respect to their location and the manner

in which they are to be conducted in a thickly populated city, is well within the range of the power of the state to legislate for the health and general welfare of the people.

While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the law-making power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment. *Slaughter House Cases,* 16 Wall. 36, 62; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 667; *Barbier* v. *Connolly,* 113 U. S. 27, 30; *Soon Hing* v. *Crowley,* 113 U. S. 703, 708; *Lawton* v. *Steele,* 152 U. S. 133, 136; *Gundling* v. *Chicago,* 177 U. S. 183, 188; *Williams* v. *Arkansas,* 217 U. S. 79, 87; *Cronin* v. *People,* 82 N. Y. 318, 321; *In re Wilson,* 32 Minnesota, 145, 148; *City of St. Louis* v. *Russell,* 116 Missouri, 248, 253.

The only debatable question arises from the contention that under the particular circumstances alleged in the complaint, viz: that plaintiffs in error have conducted the livery stable business for a long time in the same location and at large expense for permanent structures, and the removal to another location would be very costly, and since (as the complaint alleges) their stables are in all respects properly conducted, this particular ordinance must be deemed an unreasonable and arbitrary exercise of the power of regulation. But these averments of fact are contradicted by the answer, and so we are confronted with the question: Upon what basis of fact is this matter to be determined? Plaintiffs in error insist that it is to be

decided upon the basis of the averments contained in their
complaint, because the Supreme Court ordered the com-
plaint to be dismissed for want of equity. But it seems
that in the practice of the courts of Arkansas, as elsewhere,
the expression "dismissed for want of equity" is employed
to indicate a decision upon the merits as distinguished
from one based upon a formal defect or default; and that
it applies as well where on final hearing it is found that
the averments of the complaint are not true in fact, as
where those averments do not upon their face show a
sufficient basis of fact for the granting of the relief sought.
*Meux* v. *Anthony*, 11 Arkansas, 411, 422, 424; *Smith* v.
*Carrigan*, 23 Arkansas, 555; *McRae* v. *Rogers*, 30 Arkansas,
272.

Upon the face of this record it appears that all the mate-
rial averments of the bill were denied by the answer, and
that the latter pleading also showed particular reasons
why it was proper for the city council to prohibit the
further maintenance of livery stables within the limited
district described in the ordinance. It was averred that
that district is in a densely populated and busy part of
the City of Little Rock, and that the stables are conducted
in a careless manner, with offensive odors, and so as to be
productive of disease. Plaintiffs did not contradict this,
but demurred to the answer as insufficient in law, and the
cause was heard in the trial court upon the complaint
and exhibits, the answer, and the demurrer. The demurrer
being sustained, and defendants declining to plead further,
a perpetual restraining order followed in due course.
Upon the removal of the cause to the Supreme Court
on defendant's appeal it was heard there, as appears from
the decree rendered by that court, "upon the transcript
of the record of the Chancery Court of Pulaski County."
That record includes not only the complaint, but the
answer and demurrer. The Supreme Court in its opinion
made no statement of the facts upon which it proceeded

to judgment, and did not intimate that it ignored the effect of the answer and confined itself to the averments of the bill alone.   It is true that broad reasoning was employed; but, upon familiar principles, the opinion is to be interpreted in the light of the issue as framed by the pleadings.   Besides, the petition for rehearing especially set up that the effect of the ruling of the Supreme Court was to deprive plaintiffs of the opportunity of presenting evidence to sustain those allegations of the complaint that were denied by the answer, that unless they were given an opportunity to introduce evidence the answer might be taken as conclusive against them, and that the cause ought to have been remanded to take evidence, etc. The fact that the Supreme Court denied the rehearing without giving reasons is at least consistent with the theory that plaintiffs had properly interpreted the meaning of the decree as entered, and that it correctly expressed the intent and the purpose of the court.

By § 25 of the Judiciary Act of 1789 (ch. 20, 1 Stat. 86) it was provided: "No other error shall be assigned or regarded as a ground of reversal  .  .  .   than such as appears on the face of the record."   Under this Act, it was uniformly held that in reviewing the judgments of state courts (in States other than Louisiana, where the opinion formed a part of the record), this court could not look into the opinion to ascertain what was decided. In the amendatory act of February 5, 1867 (ch. 28, § 2, 14 Stat. 386), the words above quoted were omitted, and because of this it has since been held that this court is not so closely restricted as before to the face of the record to ascertain what was decided in the state court, and may examine the opinion, when properly authenticated, so far as may be useful in determining that question.   This is recognized in paragraph 2 of our eighth rule.   "But after all," said Mr. Justice Miller, speaking for the court in *Murdock* v. *City of Memphis*, 20 Wall. 590, 633, 634,

"the record of the case, its pleadings, bills of exceptions, judgment, evidence, in short, its record, whether it be a case in law or equity, must be the chief foundation of the inquiry; and while we are not prepared to fix any absolute limit to the sources of the inquiry under the new act, we feel quite sure it was not intended to open the scope of it to any loose range of investigation."

If the record, including the opinion, leaves it a matter of doubtful inference upon what basis of fact the state court rested its decision of the Federal question, it seems to us very plain, upon general principles, that we ought to assume, so far as the state of the record permits, that it adopted such a basis of fact as would most clearly sustain its judgment. Hence, in the present case, we ought to and do assume that the Arkansas Supreme Court acted upon the basis of the facts set up in the answer of the City, treating them as sufficiently substantiated by the effect of the demurrer in admitting them to be true so far as properly pleaded. This being so, there is, as we have already remarked, no reasonable question of the validity of the ordinance, and the judgment of the Supreme Court is

*Affirmed.*