# HADACHECK *v.* SEBASTIAN, CHIEF OF POLICE OF THE CITY OF LOS ANGELES.

## ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 32.  Submitted October 22, 1915.—Decided December 20, 1915.

While the police power of the State cannot be so arbitrarily exercised as to deprive persons of their property without due process of law or deny them equal protection of the law, it is one of the most essential powers of Government and one of the least limitable—in fact, the imperative necessity for its existence precludes any limitation upon it when not arbitrarily exercised.

A vested interest cannot because of conditions once obtaining be asserted against the proper exercise of the police power—to so hold would preclude development. *Chicago & Alton R. R.* v. *Tranbarger*, 238 U. S. 67.

There must be progress, and in its march private interests must yield to the good of the community.

The police power may be exerted under some conditions to declare that under particular circumstances and in particular localities specified businesses which are not nuisances *per se* (such as livery stables, as in *Reinman* v. *Little Rock*, 237 U. S. 171, and brick yards, as in this case) are to be deemed nuisances in fact and law.

While an ordinance prohibiting the manufacturing of bricks within a specified section of a municipality may be a constitutional exercise of the police power—*quære* whether prohibiting of digging the clay and moving it from that section would not amount to an unconstitutional deprivation of property without due process of law.

This court cannot consider the contention of one attacking a municipal ordinance that it denies him equal protection of the laws when based upon disputable considerations of classification and on a comparison

of conditions of which there is no means o˝ judicial determination.

In this case, the charges of plaintiff in error that the ordinance attacked and alleged to be ruining his business was adopted in order to foster a monopoly and suppress his, competition with others. in the same business, is too illusive for this court to consider, the state courts having also refuted it.

The fact that a particular business is not prohibited in all sections of a municipality, does not for that reason, make the ordinance unconstitutional as denying equal protection of the law to those carrying on that business in the prohibited section—conditions may justify the distinction and classification.

In determining whether a municipal ordinance goes further than necessary to remedy the evil to be cured, this court must, in the absence of clear showing to the contrary, accord good faith to the municipality.

Whether an ordinance is within the charter power of the city or valid under the state constitution are questions of state law.

An ordinance of Los Angeles prohibiting the manufacturing of bricks within specified limits of the city, *held*, in an action brought by the owner of brick clay deposits and a brick factory, not to be unconstitutional as depriving him of his property without due process of law, or as denying him equal protection of the laws.

165 California, 416, affirmed.

THE facts, which involve the constitutionality under the due process and equal protection provisions of the Fourteenth Amendment of an ordinance of Los Angeles prohibiting brick yards within certain limits of the city, are stated in the opinion.

*Mr. Emmett H. Wilson* and *Mr. G. C. DeGarmo* for plaintiff in error:

Although an ordinance is purported to have been enacted to protect the public health, morals or safety if it has no substantial relation to those objects, constitutional rights have been invaded and it is the duty of the court so to adjudge. *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Lochner* v. *New York*, 198 U. S. 45; *Lawton* v. *Steele*, 152 U. S. 133.

The State, or any political subdivision thereof, when

legislating for the protection of the public health, the public morals, or the public safety, is subject to the paramount authority of Federal Constitution of the United States, and is not permitted to violate rights secured or guaranteed thereby. *Henderson* v. *Wickham*, 92 U. S. 259; *Hannibal Co.* v. *Husen*, 95 U. S. 465; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Walling* v. *Michigan*, 116 U. S. 446; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

The business of operating brick yards and manufacturing brick is a useful, necessary and lawful occupation and is not a nuisance *per se*. *Huckenstine's Appeal*, 70 Pa. St. 102; *State* v. *Board of Health*, 16 Mo. App. 8; *Phillips* v. *Lawrence V. B. & T. Co.*, 72 Kansas, 643; *Denver* v. *Rogers*, 46 Colorado, 479; *Windfall Mfg. Co.* v. *Patterson*, 148 Indiana, 414; *Belmont* v. *New England Brick Co.*, 190 Massachusetts, 442.

A city cannot prohibit the maintenance of a brick yard unless, by reason of the manner of its operation, it becomes a nuisance in fact. *Yates* v. *Milwaukee*, 10 Wall. 497; *Everett* v. *Council Bluffs*, 46 Iowa, 66; *Ex parte Sing Lee*, 96 California, 354; *In re Sam Kee*, 31 Fed. Rep. 680; *In re Hong Wah*, 82 Fed. Rep. 623; *Ex parte Whitwell*, 98 California, 73; *Stockton Laundry Case*, 26 Fed. Rep. 611; *Denver* v. *Rogers*, 46 Colorado, 479; *Denver* v. *Mullin*, 7 Colorado, 345; *Phillips* v. *Denver*, 19 Colorado, 179, 184.

A city council is not empowered to pass an ordinance making that a nuisance which is not a nuisance *per se*. The legislative declaration cannot alter the character of a business so as to make a nuisance of that which is not such in fact. Nor will the mere legislative declaration of the existence of a nuisance be accepted as a fact by the courts. Cases *supra* and *Los Angeles* v. *Hollywood Cemetery*, 124 California, 344; *Grossman* v. *Oakland*, 30 Oregon, 478.

The power possessed by the city to abate nuisances does

not include power to prevent unless the business is a nuisance *per se.* *Lake View* v. *Letz,* 44 Illinois, 81; *In re Smith,* 143 California, 371; *Hume* v. *Laurel Hill Cemetery,* 142 Fed. Rep. 552, 563; *Laurel Hill Cemetery* v. *City,* 152 California, 464, 472; Freund, Police Power, §§ 63, 144; Dillon, Mun. Corp. (5th ed.), § 666; *In re Kelso,* 147 California, 611; *Covington & L. P. R. Co.* v. *Sandford,* 164 U. S. 578, 592; *Ruhstrat* v. *People,* 185 Illinois, 133.

In cases of this kind the court must scrutinize the objects and purposes sought to be accomplished by the ordinance in question for the purpose of determining its validity. In so doing they are not limited to matters that appear upon the face of the ordinance, but may consider all the circumstances in the light of existing conditions. Cases *supra* and *Lake View* v. *Tate,* 130 Illinois, 247; *Ex parte Patterson,* 42 Tex. Crim. Rep. 256; *People* v. *Armstrong,* 73 Michigan, 288; *Oxanna* v. *Allen,* 90 Alabama, 468; *Tugman* v. *Chicago,* 78 Illinois, 405; *Cleveland Co.* v. *Connorsville,* 147 Indiana, 277; *State* v. *Boardman,* 93 Maine, 73; *Kosciusko* v. *Slomberg,* 68 Mississippi, 469; *Crowley* v. *West,* 52 La. Ann. 526; *Odd Fellows' Cemetery* v. *San Francisco,* 140 California, 226; *Pieri* v. *Mayor,* 42 Mississippi, 493; *Corregan* v. *Gage,* 68 Missouri, 541; *Chicago* v. *Rumpf,* 45 Illinois, 90.

The exercise of the police power cannot be made a mere cloak for the arbitrary interference with or the suppression of a lawful business, cases *supra,* nor can discriminatory legislation be sustained even though enacted under color of sanitary power. Freund, Police Power, § 138.

A law is not general or constitutional if it imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a person selected from the general body of those who stand in precisely the same relation to the subject of the law. *Pasadena* v. *Stimson,* 91 California, 238; *Bruch* v. *Colombet,* 104 California, 347; *Darcy* v. *Mayor,* 104 California, 642; *People* v. *Cent. Pac.*

*R. R.*, 105 California, 576, 584; *Cullen* v. *Glendora Water Co.*, 113 California, 503; *Ex parte Clancy*, 90 California, 553; *Krause,* v. *Durbrow*, 127 California, 681.

The imposition of dissimilar regulations upon different persons engaged in the same business must be founded upon differences that will rationally justify the diversity of legislation. *Ex parte Jentzsch*, 112 California, 474; *Darcy* v. *Mayor*, 104 California, 642; *Ex parte Bowen*, 115 California, 372; *Ex parte Dickey*, 144 California, 237; *People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126; *Phillips* v. *Denver*, 19 Colorado, 179; *Belmont* v. *New England Brick Co.*, 190 Massachusetts, 442; *Commonwealth* v. *Mahalsky*, 203 Massachusetts, 241; *Chicago* v. *Netcher*, 183 Illinois, 104; *Braceville Coal Co.* v. *People*, 147 Illinois, 66.

The ordinance in question deprives the plaintiff in error of his property without due process of law and is therefore void. *Frorer* v. *People*, 141 Illinois, 171; *Ramsey* v. *People*, 142 Illinois, 380; *C., B. & Q. R. R.* v. *Chicago*, 166 U. S. 224; *Chicago* v. *Netcher*, 183 Illinois, 104; *Braceville Coal Co.* v. *People*, 147 Illinois, 66.

In order to sustain the validity of a municipal ordinance it is necessary for the court to determine that its provisions are reasonable. *Chicago* v. *Rumpf*, 45 Illinois, 90; *Toledo W. & W. Ry.* v. *Jacksonville*, 67 Illinois, 37; *Tugman* v. *Chicago*, 78 Illinois, 405; *Lake View* v. *Tate*, 130 Illinois, 247; *Oxanna* v. *Allen*, 90 Alabama, 468.

The ordinance is unreasonable because the severe measures adopted were not reasonably necessary for the prevention of the acts complained of in reference to the brickyard. Remedies other than confiscation of the property would have been effective. Cases *supra* and *Judson* v. *Los Angeles Suburban Gas Co.*, 157 California, 168.

The ordinance is unreasonable because if any nuisance has existed the same may be abated by regulatory rather

than by suppressive and confiscatory measures. The business should be allowed to continue upon eliminating such features, if any, as constituted a nuisance. Cases *supra* and *Green* v. *Lake*, 54 Mississippi, 540; *Chamberlain* v. *Douglas*, 48 N. Y. Supp. 710; *Pach* v. *Geoffrey*, 22 N. Y. Supp. 275; *Yocum* v. *Hotel St. George*, 18 Abb. N. C. (N. Y.) 340; *Miller* v. *Webster*, 94 Iowa, 162.

The ordinance is unreasonable because it is not limited with reference to conditions and measures. The danger may be slight and remote while the remedy—entire suppression—could not be more drastic. Cases *supra* and Freund, Police Power, § 143.

The ordinance is unreasonable because the means adopted are out of proportion to the danger involved. The restraint should not be disproportionate to the danger. Cases *supra* and Freund, Police Power, §§ 150, 158.

The ordinance is unreasonable because the law will not take cognizance of petty inconveniences and slight grievances. Cases *supra* and Freund, Police Power, § 178; Joyce on Nuisances, §§ 93, 96; *Van de Veer* v. *Kansas City*, 107 Missouri, 83; *Susquehanna Co.* v. *Spangler*, 86 Maryland, 562; *Tuttle* v. *Church*, 53 Fed. Rep. 422; *Gilbert* v. *Showerman*, 23 Michigan, 448; *McGuire* v. *Bloomingdale*, 29 N. Y. Supp. 580; *Gallagher* v. *Flury*, 99 Maryland, 181.

The ordinance is discriminatory and unreasonable because the district was unreasonably and irrationally created. Cases *supra* and Freund, Police Power, § 179.

The police power cannot be used for the purpose of protecting property values. Cases *supra* and *Chicago* v. *Gunning System*, 214 Illinois, 62; Const. California, Art. 11, § 11; Cooley, Const. Lim. (7th ed.), 837.

The provision of the city charter (§ 2, sub. 22), giving the city general power to make and enforce peace and sanitary regulations is modified and limited by the specific power given (§ 2, sub. 13) to "restrain, suppress and pro-

hibit" certain named occupations. *Rodgers* v. *United States*, 185 U. S. 83; *In re Rouse*, 91 Fed. Rep. 96; *Crane* v. *Reeder*, 22 Michigan, 322; *Phillips* v. *Christian County*, 87 Ill. App. 481; *Felt* v. *Felt*, 19 Wisconsin, 193; *Nance* v. *Southern Ry.*, 149 N. Car. 366; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Stockett* v. *Bird*, 18 Maryland, 484; *Nichols* v. *State*, 127 Indiana, 406; *State* v. *Hobe*, 106 Wisconsin, 411; *State* v. *Dinnesse*, 109 Missouri, 434; *Frandzen* v. *San Diego*, 101 California, 317.

The city having adopted the special and limited power set forth in the charter (§ 2, sub. 13), did not accept in its entirety the right to enforce the police power of the State as granted by § 11, art. XI of the constitution. *Rapp* v. *Kiel*, 159 California, 702, 709; *In re Pfahler*, 150 California, 71, 81; *People* v. *Newman*, 96 California, 605; *State* v. *Ferguson*, 33 N. H. 424; *Northwestern Tel. Co.* v. *St. Charles*, 154 Fed. Rep. 386; *Louis* v. *West. Un. Tel. Co.*, 149 U. S. 465.

The legislative body of a city having freeholders' charter may be limited by charter provision in the exercise of the police power conferred upon the city by the constitution of the State. Cases *supra*.

*Mr. Albert Lee Stephens*, *Mr. Charles S. Burnell* and *Mr. Warren L. Williams* for defendant in error:

For other ordinances prohibiting the maintenance of certain classes of business in residence districts see *Ex parte Quong Wo*, 161 California, 220; *Grumbach* v. *Lelande*, 154 California, 679; *In re Montgomery*, 163 California, 457; *In re Linehan*, 72 California, 114.

The police power extends to all the great public needs. *Canfield* v. *United States*, 167 U. S. 518; *Bacon* v. *Walker*, 204 U. S. 311, 317; *C., B. & Q. R. R.* v. *Drainage Commrs.*, 200 U. S. 592; *Noble State Bank* v. *Haskell*, 219 U. S. 104; *Lake Shore Rwy.* v. *Ohio*, 173 U. S. 285; *Thorpe* v. *Railway*, 27 Vermont, 140; *Pound* v. *Turck*, 96 U. S. 464; *Railroad*

v. *Husen,* 96 U. S. 470; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Bracey* v. *Darst,* 218 Fed. Rep. 98.

Under what circumstances the police power should be exercised to prohibit the conduct of certain classes of business within a certain district is a matter of police regulation for the municipal authorities. *New Orleans* v. *Murat,* 119 Louisiana, 1093; *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703.

It is primarily for the legislative body clothed with the proper power, to determine when such regulations are essential, and its determination in this regard, in view of its better knowledge of all the circumstances and of the presumption that it is acting with a due regard for the rights of all parties, will not be disturbed in the courts unless it can plainly be seen that the regulation has no relation to the ends above stated, but is a clear invasion of personal or property rights under the guise of police regulation. Cases *supra* and *Krittenbrink* v. *Withnell,* 135 N. W. Rep. 376; *Odd Fellows Cemetery* v. *San Francisco,* 140 California, 226; *Laurel Hill Cemetery* v. *San Francisco,* 152 California, 464; *In re Smith,* 143 California, 370; *Ex parte Tuttle,* 91 California, 589, 591; *Mo. Pac. R. R.* v. *Omaha,* 235 U. S. 121.

The reasons actuating the legislative body in enacting the regulation need not necessarily appear from a reading of the ordinance itself. *Grumbach* v. *Lelande,* 154 California, 685; *In re Zhizhuzza,* 147 California, 328, 334.

The laws and policy of a State may be framed and shaped to suit its conditions of climate and soil, and the exercise of the police power may and should have reference to the particular situation and needs of the community. *Ohio Co.* v. *Indiana,* 177 U. S. 190; *Clark* v. *Nash,* 198 U. S. 361; *Strickly* v. *Highland Co.,* 200 U. S. 527; *Offield* v. *N. Y. Co.,* 203 U. S. 372; *McLean* v. *Denver,* 203 U. S. 38; *Brown* v. *Walling,* 204 U. S. 320; *Bacon* v. *Walker,* 204 U. S. 311;

*Plessy* v. *Ferguson,* 163 U. S. 537; *Welch* v. *Sweney,* 23 L. R. A. (N. S.) 1160.

It is not necessary that a business be a nuisance *per se* to be regulated. *Ex parte Lacey,* 108 California, 326; *Moses* v. *United States,* 16 App. Cas. D. C. 428; *Rhodes* v. *Dunbar,* 57 Pa. St. 275; *Breadman* v. *Tredwell,* 31 Law Journal (N. S.), 873; *Bassham* v. *Hall,* 22 Law Times, 116; *Bumford* v. *Tumley,* 2 B. & S. (Q. B.) 62; *Campbell* v. *Seaman,* 63 N. Y. 568.

The question whether the classification of subjects for the exercise of police power is proper is not. to be determined upon hard and fast rules, but must be answered after a consideration of the particular subject of litigation. *Ex parte Stoltenberg,* 134 Pac. Rep. 971.

The length of time during which a business has existed in a certain locality does not make its prohibition for the future unconstitutional. Tiedeman's Stat. and Fed. Control; *Russell* v. *Beatty,* 16 Mo. App. 131; Sedgwick's Stat. and Const. Law, 434; *C., B. & Q. R. R.* v. *Drainage Commrs.,* 200 U. S. 592; Freund on Police Power, § 529; *Case of Morskettle,* 16 Mo. App. 8; *Powell* v. *Brookfield Brick Co.,* 78 S. W. Rep. 648; *Bushnell* v. *Robinson,* 62 Iowa, 542; *Baltimore* v. *Fairfield,* 87 Maryland, 352; *Harmison* v. *Lewiston,* 46 Ill. App. 164; *Commonwealth* v. *Upton,* 6 Gray, 473; *Rhodes* v. *Dunbar,* 57 Pa. St. 257; *People* v. *Detroit Lead Works,* 82 Michigan, 471.

Where the police power restricts constitutional rights, particularly as to property, the value of that property is not material to the issue. *Mugler* v. *Kansas,* 123 U. S. 623; *Grumbach* v. *Lelande,* 145 California, 684; *Western Indemnity Co.* v. *Pillsbury,* 50 (No. 2654) Cal. Dec. 291; *Erie R. R.* v. *Williams,* 233 U. S. 685, 700.

The size of the territory affected by the ordinance is no criterion by which to be guided in judging of its discriminatory qualities. Cases *supra.*

That a statute will result in injury to some private

interest does not deprive the legislature of power to enact it, although a statute may be invalid where its purpose is primarily the destruction of property. *Enos* v. *Hanff,* 152 N. W. Rep. 397.

The character and value of property contiguous to the business of plaintiff in error is very much to be considered. *Krittenbrink* v. *Withnell,* 135 N. W. Rep. 376.

That similar conditions exist in other localities is no reason why an ordinance regulating and equally affecting every one in a given locality should be declared unconstitutional.

A statute enacted within the police power will not be adjudged invalid merely because omitted cases might have been properly included in the statute. *People* v. *Schweinler,* 214 N. Y. 395; *Krohn* v. *Warden,* 152 N. Y. Supp. 1136; *State* v. *Olson,* 26 N. Dak. 304.

Every holder of property holds it under the implied liability that its use may be so regulated that it shall not encroach injuriously on the enjoyment of property by others or be injurious to the community. *Pittsburg Ry.* v. *Chappell,* 106 N. E. Rep. (Ind.) 403.

People residing in cities are entitled to enjoy their homes free from the damaging results of smoke, soot, and cinders, if sufficient to depreciate the value of their property and render its occupancy uncomfortable. *King* v. *Vicksburg Rwy.,* 88 Mississippi, 456; *Rochester* v. *Macauley-Fien Co.,* 199 N. Y. 207.

Brick yards and brick manufacturing plants, as well as all businesses which require the generation of smoke, soot, and gas, have universally been held to be objectionable and may be enjoined or regulated. Cases *supra* and *Booth* v. *Nome R. R.,* 37 Am. St. Rep. 552, 558; *McMorran* v. *Fitzgerald,* 106 Michigan, 649; *King* v. *Vicksburg Ry.,* 117 Am. St. Rep. 749; *Rochester* v. *Macauley-Fien Co.,* 199 N. Y. 207.

It is immaterial whether injury from gases emitted from

brick kilns is only occasional. Cases *supra* and *Kirch-graber* v. *Lloyd,* 59 Mo. App. 59.

The presumption is in favor of the validity of the ordinance and this presumption has not been rebutted by any evidence produced by plaintiff in error.

Prohibition of industries in certain sections of cities is but a regulation, and is always so treated. *Ex parte Byrd,* 54 Alabama, 17; *In re Wilson,* 32 Minnesota, 145; *Shea* v. *Muncie,* 148 Indiana, 14; *Cronin* v. *People,* 82 N. Y. 318; *Newton* v. *Joyce,* 166 Massachusetts, 83; *Little Rock* v. *Rineman,* 155 S. W. Rep. 105; *St. Louis* v. *Russell,* 116 Missouri, 248; *Ex parte Botts,* 154 S. W. Rep. 221.

The city has the right to regulate an occupation by confining the conducting thereof within prescribed limits. Cases *supra; Grumbach* v. *Lelande,* 154 California, 679; *In re Linehan,* 72 California, 114; *White* v. *Bracelin,* 144 Michigan, 332; 107 N. W. Rep. 1055; *Stram* v. *Galesburg,* 203 Illinois, 234; 67 N. E. Rep. 836; *New Orleans* v. *Murat,* 119 Louisiana, 1093; 44 So. Rep. 898; *Ex parte Botts,* 154 S. W. Rep. 221.

MR. JUSTICE McKENNA delivered the opinion of the court.

*Habeas corpus* prosecuted in the Supreme Court of the State of California for the discharge of plaintiff in error from the custody of defendant in error, Chief of Police of the City of Los Angeles.

Plaintiff in error, to whom we shall refer as petitioner, was convicted of a misdemeanor for the violation of an ordinance of the City of Los Angeles which makes it unlawful for any person to establish or operate a brick yard or brick kiln, or any establishment, factory or place for the manufacture or burning of brick within described limits in the city. Sentence was pronounced against him

and he was committed to the custody of defendant in error as Chief of Police of the City of Los Angeles.

Being so in custody he filed a petition in the Supreme Court of the State for a writ of *habeas corpus.* The writ was issued. Subsequently defendant in error made a return thereto supported by affidavits, to which petitioner made sworn reply. The court rendered judgment discharging the writ and remanding petitioner to custody. The Chief Justice of the court then granted this writ of error.

The petition sets forth the reason for resorting to *habeas corpus* and that petitioner is the owner of a tract of land within the limits described in the ordinance upon which tract of land there is a very valuable bed of clay, of great value for the manufacture of brick of a fine quality, worth to him not less than $100,000 per acre or about $800,000 for the entire tract for brick-making purposes, and not exceeding $60,000 for residential purposes or for any purpose other than the manufacture of brick. That he has made excavations of considerable depth and covering a very large area of the property and that on account thereof the land cannot be utilized for residential purposes or any purpose other than that for which it is now used. That he purchased the land because of such bed of clay and for the purpose of manufacturing brick; that it was at the time of purchase outside of the limits of the city and distant from dwellings and other habitations and that he did not expect or believe, nor did other owners of property in the vicinity expect or believe, that the territory would be annexed to the city. That he has erected expensive machinery for the manufacture of bricks of fine quality which have been and are being used for building purposes in and about the city.

That if the ordinance be declared valid he will be compelled to entirely abandon his business and will be deprived of the use of his property.

That the manufacture of brick must necessarily be carried on where suitable clay is found and the clay cannot be transported to some other location, and, besides, the clay upon his property is particularly fine and clay of as good quality cannot be found in any other place within the city where the same can be utilized for the manufacture of brick. That within the prohibited district there is one other brick yard besides that of plaintiff in error.

That there is no reason for the prohibition of the business; that its maintenance cannot be and is not in the nature of a nuisance as defined in § 3479 of the Civil Code of the State, and cannot be dangerous or detrimental to health or the morals or safety or peace or welfare or convenience of the people of the district or city.

That the business is so conducted as not to be in any way or degree a nuisance; no noises arise therefrom, and no noxious odors, and that by the use of certain means (which are described) provided and the situation of the brick yard an extremely small amount of smoke is emitted from any kiln and what is emitted is so dissipated that it is not a nuisance nor in any manner detrimental to health or comfort. That during the seven years which the brick yard has been conducted no complaint has been made of it, and no attempt has ever been made to regulate it.

That the city embraces 107.62 square miles in area and 75% of it is devoted to residential purposes; that the district described in the ordinance includes only about three square miles, is sparsely settled and contains large tracts of unsubdivided and unoccupied land; and that the boundaries of the district were determined for the sole and specific purpose of prohibiting and suppressing the business of petitioner and that of the other brick yard.

That there are and were at the time of the adoption of the ordinance in other districts of the city thickly built up with residences brick yards maintained more detrimental to the inhabitants of the city. That a petition was filed,

signed by several hundred persons, representing such brick yards to be a nuisance and no ordinance or regulation was passed in regard to such petition and the brick yards are operated without hindrance or molestation. That other brick yards are permitted to be maintained without pro- hibition or regulation.

That no ordinance or regulation of any kind has been passed at any time regulating or attempting to regu- late brick yards or inquiry made whether they could be maintained without being a nuisance or detrimental to health.

That the ordinance does not state a public offense and is in violation of the constitution of the State and the Fourteenth Amendment to the Constitution of the United States.

That the business of petitioner is a lawful one, none of the materials used in it are combustible, the machinery is of the most approved pattern and its conduct will not create a nuisance.

There is an allegation that the ordinance if enforced fosters and will foster a monopoly and protects and will protect other persons engaged in the manufacture of brick in the city, and discriminates and will discriminate against petitioner in favor of such other persons who are his com- petitors, and will prevent him from entering into competi- tion with them.

The petition, after almost every paragraph, charges a deprivation of property, the taking of property without compensation, and that the ordinance is in consequence invalid.

We have given this outline of the petition as it presents petitioner's contentions, with the circumstances (which we deem most material) that give color and emphasis to them.

But there are substantial traverses made by the return to the writ, among others, a denial of the charge that the ordinance was arbitrarily directed against the business of

petitioner, and it is alleged that there is another district in which brick yards are prohibited.

There was a denial of the allegations that the brick yard was conducted or could be conducted sanitarily or was not offensive to health. And there were affidavits supporting the denials. In these it was alleged that the fumes, gases, smoke, soot, steam and dust arising from petitioner's brick-making plant have from time to time caused sickness and serious discomfort to those living in the vicinity.

There was no specific denial of the value of the property or that it contained deposits of clay or that the latter could not be removed and manufactured into brick elsewhere. There was, however, a general denial that the enforcement of the ordinance would "entirely deprive petitioner of his property and the use thereof."

How the Supreme Court dealt with the allegations, denials and affidavits we can gather from its opinion. The court said, through Mr. Justice Sloss, 165 California, p. 416: "The district to which the prohibition was applied contains about three square miles. The petitioner is the owner of a tract of land, containing eight acres, more or less, within the district described in the ordinance. He acquired his land in 1902, before the territory to which the ordinance was directed had been annexed to the city of Los Angeles. His land contains valuable deposits of clay suitable for the manufacture of brick, and he has, during the entire period of his ownership, used the land for brickmaking, and has erected thereon kilns, machinery and buildings necessary for such manufacture. The land, as he alleges, is far more valuable for brickmaking than for any other purpose."

The court considered the business one which could be regulated and that regulation was not precluded by the fact "that the value of investments made in the business prior to any legislative action will be greatly diminished," and that no complaint could be based upon the fact that

petitioner had been carrying on the trade in that locality for a long period.

And, considering the allegations of the petition, the denials of the return and the evidence of the affidavits, the court said that the latter tended to show that the district created had become primarily a residential section and that the occupants of the neighboring dwellings are seriously incommoded by the operations of petitioner; and that such evidence, "when taken in connection with the presumptions in favor of the propriety of the legislative determination, overcame the contention that the prohibition of the ordinance was a mere arbitrary invasion of private right, not supported by any tenable belief that the continuance of the business was so detrimental to the interests of others as to require suppression."

The court, on the evidence, rejected the contention that the ordinance was not in good faith enacted as a police measure and that it was intended to discriminate against petitioner or that it was actuated by any motive of injuring him as an individual.

The charge of discrimination between localities was not sustained. The court expressed the view that the determination of prohibition was for the legislature and that the court, without regard to the fact shown in the return that there was another district in which brick-making was prohibited, could not sustain the claim that the ordinance was not enacted in good faith but was designed to discriminate against petitioner and the other brick yard within the district. "The facts before us," the court finally said, "would certainly not justify the conclusion that the ordinance here in question was designed, in either its adoption or its enforcement, to be anything but what it purported to be, viz., a legitimate regulation, operating alike upon all who came within its terms."

We think the conclusion of the court is justified by the evidence and makes it unnecessary to review the many

cases cited by petitioner·in which it is decided that the police power of a state cannot be arbitrarily exercised. The principle is familiar, but in any given case it must plainly appear to apply. It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for. its existence precludes any limitation upon it when not exerted arbitrarily.. A vested interest cannot be asserted against it because of conditions once obtaining. *Chicago & Alton R. R.* v. *Tranbarger*, 238 U. S. 67, 78. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community. The logical result of petitioner's contention would seem to be that a city could not be formed or enlarged against the resistance of an occupant of the ground and that if it grows at all it can only grow as the environment of the occupations that are usually banished to the purlieus.

The police power' and to what extent it may be exerted we have recently illustrated in *Reinman* v. *Little. Rock*, 237 U. S. 171. The circumstances of the case were very much like those of the case at bar and give reply to the contentions of petitioner, especially that which asserts that a necessary and lawful occupation that is not a nuisance *per se* cannot be made so by legislative declaration. There was a like investment in property, encouraged by the then conditions; a like reduction of value and deprivation of property was asserted against the validity of the ordinance there considered; a like assertion of an arbitrary exercise of the power of prohibition. Against all of these contentions, and causing the rejection of them all, was adduced the police power. There was a prohibition of a business, lawful in itself, there as here. It was a livery stable there; a brick yard here. They differ in

particulars, but they are alike in that which cause and justify prohibition in defined localities—that is, the effect upon the health and comfort of the community.

The ordinance passed upon prohibited the conduct of the business within a certain defined area in Little Rock, Arkansas. This court said of it: granting that the business was not a nuisance *per se,* it was clearly within the police power of the State to regulate it, "and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law." And the only limitation upon the power was stated to be that the power could not be exerted arbitrarily or with unjust discrimination. There was a citation of cases. We think the present case is within the ruling thus declared.

There is a distinction between *Reinman* v. *Little Rock* and the case at bar. There a particular business was prohibited which was not affixed to or dependent upon its locality; it could be conducted elsewhere. Here, it is contended, the latter condition does not exist, and it is alleged that the manufacture of brick must necessarily be carried on where suitable clay is found and that the clay on petitioner's property cannot be transported to some other locality. This is not urged as a physical impossibility but only, counsel say, that such transportation and the transportation of the bricks to places where they could be used in construction work would be prohibitive "from a financial standpoint." But upon the evidence the Supreme Court considered the case, as we understand its opinion, from the standpoint of the offensive effects of the operation of a brick yard and not from the deprivation of the deposits of clay, and distinguished *Ex parte Kelso,* 147 California, 609, wherein the court declared invalid an ordinance absolutely prohibiting the maintenance or operation of a rock or stone quarry within a certain portion of the city and county of San Francisco.

The court there said that the effect of the ordinance was "to absolutely deprive the owners of real property within such limits of a valuable right incident to their ownership,—viz., the right to extract therefrom such rock and stone as they might find it to their advantage to dispose of." The court expressed the view that the removal could be regulated but that "an absolute prohibition of such removal under the circumstances," could not be upheld.

In the present case there is no prohibition of the removal of the brick clay; only a prohibition within the designated locality of its manufacture into bricks. And to this feature of the ordinance our opinion is addressed. Whether other questions would arise if the ordinance were broader, and opinion on such questions, we reserve.

Petitioner invokes the equal protection clause of the Constitution and charges that it is violated in that the ordinance (1) "prohibits him from manufacturing brick upon his property while his competitors are permitted, without regulation of any kind, to manufacture brick upon property situated in all respects similarly to that of plaintiff in error"; and (2) that it "prohibits the conduct of his business while it permits the maintenance within the same district of any other kind of business, no matter how objectionable the same may be, either in its nature or in the manner in which it is conducted."

If we should grant that the first specification shows a violation of classification, that is, a distinction between businesses which was not within the legislative power, petitioner's contention encounters the objection that it depends upon an inquiry of fact which the record does not enable us to determine. It is alleged in the return to the petition that brickmaking is prohibited in one other district and an ordinance is referred to regulating business in other districts. To this plaintiff in error replied that the ordinance attempts to prohibit the operation of certain

businesses having mechanical power and does not prohibit the maintenance of any business or the operation of any machine that is operated by animal power. In other words, petitioner makes his contention depend upon disputable considerations of classification and upon a comparison of conditions of which there is no means of judicial determination and upon which nevertheless we are expected to reverse legislative action exercised upon matters of which the city has control.

To a certain extent the latter comment may be applied to other contentions, and, besides, there is no allegation or proof of other objectionable businesses being permitted within the district, and a speculation of their establishment or conduct at some future time is too remote.

In his petition and argument something is made of the ordinance as fostering a monopoly and suppressing his competition with other brickmakers. The charge and argument are too illusive. It is part of the charge that the ordinance was directed against him. The charge, we have seen, was rejected by the Supreme Court, and we find nothing to justify it.

It may be that brick yards in other localities within the city where the same conditions exist are not regulated or prohibited, but it does not follow that they will not be. That petitioner's business was first in time to be prohibited does not make its prohibition unlawful. And it may be, as said by the Supreme Court of the State, that the conditions justify a distinction. However, the inquiries thus suggested are outside of our province.

There are other and subsidiary contentions which, we think, do not require discussion. They are disposed of by what we have said. It may be that something else than prohibition would have satisfied the conditions. Of this, however, we have no means of determining, and besides we cannot declare invalid the exertion of a power which the city undoubtedly has because of a charge that it does

not exactly accommodate the conditions or that some other exercise would have been better or less harsh. We must accord good faith to the city in the absence of a clear showing to the contrary and an honest exercise of judgment upon the circumstances which induced its action.

We do not notice the contention that the ordinance is not within the city's charter powers nor that it is in violation of the state constitution, such contentions raising only local questions which must be deemed to have been decided adversely to petitioner by the Supreme Court of the State.

*Judgment affirmed.*